# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP584 |
| COMPLETE TITLE: | League of Women Voters of Wisconsin Education Network, Inc. and Melanie G. Ramey, |
| | Plaintiffs-Respondents-Petitioners, |
| | v. |
| | Scott Walker, Thomas Barland, Gerald C. Nichol, Michael Brennan, Thomas Cane, David G. Deininger and Timothy Vocke, |
| | Defendants-Appellants, |
| | Dorothy Janis, James Janis, Matthew Augustine, Intervenors-Co-Appellants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
348 Wis. 2d 714, 834 N.W.2d 393
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 77

| | |
|---|---|
| OPINION FILED: | July 31, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 24, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Richard G. Niess |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | CROOKS, J., concurs (Opinion filed.) |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-respondents-petitioners, there were briefs by *Lester A. Pines*, *Tamara B. Packard*, *Susan Crawford*, and *Cullen Weston Pines & Bach LLP*, Madison, and oral argument by *Lester A. Pines*.

For the defendants-appellants, the cause was argued by *Clayton P. Kawski*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general, and *Maria S. Lazar*, assistant attorney general.

For the intervenors-co-appellants, there was a brief by *James R. Troupis*, *Sarah E. Troupis*, and *Troupis Law Office LLC*, Cross Plains; *Michael T. Morley*, Cranford, N.J.; and *Dan Backer* and *Coolidge-Reagan Foundation*, Washington, D.C, and oral argument by *Michael T. Morley*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP584
(L.C. No. 2011CV4669)

STATE OF WISCONSIN : IN SUPREME COURT

League of Women Voters of Wisconsin Education Network, Inc. and Melanie G. Ramey,

    Plaintiffs-Respondents-Petitioners,

    v.

Scott Walker, Thomas Barland, Gerald C. Nichol, Michael Brennan, Thomas Cane, David G. Deininger and Timothy Vocke,

    Defendants-Appellants,

Dorothy Janis, James Janis, Matthew Augustine,

    Intervenors-Co-Appellants.

**FILED**

**JUL 31, 2014**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Modified and as modified, affirmed; injunction vacated; cause remanded to circuit court to dismiss the complaint.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] reversing an order of the circuit court[2]

---

[1] League of Women Voters of Wis. Educ. Network, Inc. v. Walker, 2013 WI App 77, 348 Wis. 2d 714, 834 N.W.2d 393.

[2] The Honorable Richard G. Niess of Dane County presided.

that declared portions of Wisconsin's voter identification law, 2011 Wis. Act 23, unconstitutional and permanently enjoined its enforcement.

¶2 Plaintiffs, the League of Women Voters of Wisconsin Education Network, Inc., and its president, Melanie G. Ramey,[3] bring a facial challenge to the law under the Wisconsin Constitution.[4] The League asserts that the legislature lacked authority to require an elector to present Act 23-acceptable photo identification. It makes the following three arguments: (1) the requirement is an additional elector qualification not listed in Article III, Section 1; (2) the requirement is not one of the five types of election-related laws in Article III, Section 2; and (3) the requirement is not reasonable.

¶3 Defendants[5] counter that Act 23 does not create an additional elector qualification, but rather, requiring voters to present Act 23-acceptable photo identification is a means to identify qualified voters. They also say that Act 23 comes within the parameters of Article III, Section 2 of the Wisconsin

---

[3] We refer to plaintiffs collectively hereinafter as "the League."

[4] Plaintiffs' challenge is based entirely on the requirement to present Act 23-acceptable photo identification to vote. It does not include any allegation that obtaining such photo identification places an unconstitutional burden on the right to vote.

[5] The defendants are Governor Walker and six members of the Government Accountability Board, all of whom are sued in their official capacities, and three individual voters who joined the suit at the court of appeals.

Constitution as a law providing for registration of voters. Defendants further contend that Act 23 is a reasonable regulation that serves the State's significant interests in promoting voter confidence in the integrity of elections, in deterring voter fraud and in orderly election administration.

¶4 We conclude that the legislature did not exceed its authority under Article III of the Wisconsin Constitution when it required electors to present Act 23-acceptable photo identification. Since 1859, we have held that "it is clearly within [the legislature's] province to require any person offering to vote[] to furnish such proof as it deems requisite[] that he is a qualif[i]ed elector." Cothren v. Lean, 9 Wis. 254 (*279), 258 (*283-84) (1859). Requiring a potential voter to identify himself or herself as a qualified elector through the use of Act 23-acceptable photo identification does not impose an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution.

¶5 We also conclude that the requirement to present Act 23-acceptable photo identification comes within the legislature's authority to enact laws providing for the registration of electors under Article III, Section 2 because Act 23-acceptable photo identification is the mode by which election officials verify that a potential voter is the elector listed on the registration list.

¶6 Finally, we conclude that plaintiff's facial challenge fails because Act 23's requirement to present photo identification is a reasonable regulation that could improve and

3

modernize election procedures, safeguard voter confidence in the outcome of elections and deter voter fraud. See Crawford v. Marion Cnty. Election Bd., 553 U.S. 181, 191 (2008). Accordingly, we affirm the decision of the court of appeals.[6]

## I. BACKGROUND

¶7 We begin with a description of the portions of Act 23 that bear on our analysis. Act 23 requires an elector to present one of nine acceptable forms of photo identification in order to vote. Wis. Stat. § 5.02(6m) (2011-12).[7] Generally stated, these include: Wisconsin Department of Transportation (DOT) issued driver's license; DOT issued photo identification card; United States uniformed service identification card; United States passport; United States naturalization certificate issued within two years preceding the election; federally recognized Wisconsin Native American tribe's identification card; Wisconsin university or college student identification card; and a citation or notice of driver's license suspension.

¶8 Act 23's presentation requirement applies to in-person as well as absentee voting, with some exceptions for, among others, electors who automatically receive absentee ballots

---

[6] The court of appeals remanded the case to the circuit court "for further proceedings consistent with this opinion as may be necessary." Because we conclude that plaintiffs' facial challenge to Act 23 fails as a matter of law, we modify the remand of the court of appeals, vacate the circuit court injunction and remand the matter to the circuit court to dismiss the lawsuit.

[7] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

under Wis. Stat. § 6.86(2)(a), residents of qualified facilities described in Wis. Stat. § 6.875(1) and military and overseas electors under Wis. Stat. § 6.865(1).  § 6.87(4)(b)2., 3., and 5.

¶9  If an elector does not present Act 23-acceptable identification on the day of the election in which he or she offers to vote, the elector may cast a provisional ballot. However, the provisional ballot will be counted only if the elector presents Act 23-acceptable identification at the polling location before 4:00 p.m. on the day of the election or at the office of the municipal clerk or board of election commissioners by the following Friday.  Wis. Stat. § 6.97(3).

¶10  Four months after Governor Walker signed Act 23 into law, the League filed this lawsuit seeking a declaration that the photo identification requirement violated Article III of the Wisconsin Constitution and asking for injunctive relief.  After denying defendants' motion to dismiss for lack of standing, the circuit court granted the League's motion for summary judgment. The circuit court concluded that the challenged portions of Act 23 were "unconstitutional to the extent they serve[d] as a condition for voting at the polls" and permanently enjoined defendants "from any further implementation or enforcement of those provisions."

¶11 The court of appeals reversed the circuit court, concluding that:  (1) the League had "not shown that the photo identification requirement is on its face an 'additional qualification' for voting"; (2) Act 23 was validly enacted

pursuant to the legislature's "implicit but broad constitutional authority to establish a voting registration system under which election officials may require potential voters to identify themselves as registered voters"; and (3) that there were no factual findings in the record to support the League's implied argument that the photo identification requirement was so burdensome that it effectively denied people the right to vote.[8] The League petitioned for review, which we granted.

## II.  DISCUSSION

¶12 The League brings a facial constitutional challenge against Act 23, asserting that the requirement to present an Act 23-acceptable photo identification creates an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution, which the legislature has no power to do; that Act 23 exceeds the scope of legislative authority authorized by Article III, Section 2 of the Wisconsin Constitution; and Act 23 is not a reasonable regulation of the elective franchise.

### A.  Standard of Review

¶13 There are two general types of constitutional challenges:  facial and as-applied.  As we explained in State v. Wood, 2010 WI 17, 323 Wis. 2d 321, 780 N.W.2d 63:

> A party may challenge a law . . . as being unconstitutional on its face.  Under such a challenge,

---

[8] The League no longer asserts that Act 23 is so burdensome that it effectively denies the right to vote, noting that this issue is now before us in Milwaukee Branch of NAACP v. Walker, 2014 WI 98, __ Wis. 2d __, __ N.W.2d __.

the challenger must show that the law cannot be enforced "under any circumstances." . . . In contrast, in an as-applied challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us, "not hypothetical facts in other situations." Under such a challenge, the challenger must show that his or her constitutional rights were actually violated.

Id., ¶13 (internal citations omitted).

¶14 The League presents only a facial challenge to Act 23, asserting that the photo identification requirement is void from its inception. The constitutionality of a statute is a question of law that we independently review, while benefitting from the analyses of the circuit court and court of appeals. State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90.

### B. Constitutional Challenge

#### 1. Foundational principles

¶15 Because the League brings a facial challenge to Act 23, it "must show that the law cannot be enforced 'under any circumstances.'" Wood, 323 Wis. 2d 321, ¶13 (citing Olson v. Town of Cottage Grove, 2008 WI 51, ¶44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211); see also United States v. Salerno, 481 U.S. 739, 745 (1987) (explaining that a facial challenge to a legislative act is the most difficult of constitutional challenges because the challenger must prove that "no set of circumstances exists under which the Act would be valid").

¶16 We generally presume that statutes are constitutional. Tammy W-G. v. Jacob T., 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854. However, the way in which we address this presumption may vary depending on the nature of the

7

constitutional claim at issue. See e.g., Milwaukee Branch of NAACP v. Walker, 2014 WI 98, ¶¶27-41, __ Wis.2d __, __ N.W.2d __, also released today. The presumption of constitutionality is based on respect for a co-equal branch of government, and it promotes due deference to legislative acts. Dane Cnty. Dep't of Human Servs. v. Ponn P., 2005 WI 32, ¶16, 279 Wis. 2d 169, 694 N.W.2d 344. This presumption applies even when a statute implicates a fundamental right, subject to limited exceptions that do not apply here. State v. Cole, 2003 WI 112, ¶¶14, 20, 264 Wis. 2d 520, 665 N.W.2d 328 (presuming that a concealed weapons law implicating the fundamental right to bear arms was constitutional). "[I]f any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality." Aicher v. Wis. Patients Comp. Fund, 2000 WI 98, ¶18, 237 Wis. 2d 99, 613 N.W.2d 849.

¶17 The challenger has a very heavy burden in overcoming the presumption of constitutionality. Dowhower v. W. Bend Mut. Ins. Co., 2000 WI 73, ¶10, 236 Wis. 2d 113, 613 N.W.2d 557. To succeed, plaintiffs must prove that the statute is unconstitutional beyond a reasonable doubt. Cole, 264 Wis. 2d 520, ¶11. While this burden of proof is often associated with the requisite proof of guilt in a criminal case, in the context of a challenge to the constitutionality of a statute, the phrase "beyond a reasonable doubt" expresses the "force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional before the statute or its application can be set aside." Ponn P., 279 Wis. 2d 169, ¶18.

8

## 2. Suffrage

¶18 The qualifications of an elector entitled to vote are set out in Article III, Section 1 of the Wisconsin Constitution. Article III, Section 2 of the Wisconsin Constitution addresses implementation of voting rights through legislation. Those two sections are the focus of our review and they provide in their entirety:

> Electors. Section 1. Every United States citizen age 18 or older who is a resident of an election district in this state is a qualified elector of that district.

> Implementation. Section 2. Laws may be enacted:

> (1) Defining residency.

> (2) Providing for registration of electors.

> (3) Providing for absentee voting.

> (4) Excluding from the right of suffrage persons:

> (a) Convicted of a felony, unless restored to civil rights.

> (b) Adjudged by a court to be incompetent or partially incompetent, unless the judgment specifies that the person is capable of understanding the objective of the elective process or the judgment is set aside.

> (5) Subject to ratification by the people at a general election, extending the right of suffrage to additional classes.

### 3. Prior Article III challenges

¶19 The League's Article III challenge stands with many significant cases that have brought constitutional challenges to legislation that bears on voting. Accordingly, we now review

some of those challenges. For example, in <u>McGrael v. Phelps</u>, 144 Wis. 1, 128 N.W. 1041 (1910), we concluded that voting was a right, not a privilege, which was guaranteed by Article III, Section 1 of the Wisconsin Constitution. <u>Id.</u> at 14-15. However, we also concluded that "there is a legitimate field of legislative activity in the nature of regulation." <u>Id.</u> at 2. In that regard, we explained:

> It has become elementary that constitutional inhibitions of legislative interference with a right, including the right to vote and rights incidental thereto, leaves, yet, a field of legislative activity in respect thereto circumscribed by the police power. That activity appertains to conservation, prevention of abuse, and promotion of efficiency. Therefore, as in all other fields of police [power] regulation, it does not extend beyond what is reasonable. . . . However, what is and what is not reasonable, is primarily for legislative judgment, subject to judicial review.

<u>Id.</u> at 17-18. We noted that judicial review of the legislature's exercise of its police power addresses "whether the interference, from the standpoint of a legitimate purpose, can stand the test of reasonableness." <u>Id.</u> at 18.

¶20 In <u>State ex rel. Small v. Bosacki</u>, 154 Wis. 475, 143 N.W. 175 (1913), we examined a statute that established voter residency requirements upon a claim that they limited the right to vote of those who worked in a district different from that in which they lived. <u>Id.</u> at 476. In upholding the law we said:

> [T]he right as well as the duty is vested in the legislature to prescribe reasonable rules and regulations under which [the franchise] may be exercised. Such rules and regulations tend to certainty and stability in government and render it

10

> possible to guard against corrupt and unlawful means being employed to thwart the will of those lawfully entitled to determine governmental policies. Their aim is to protect lawful government, not to needlessly harass or disfranchise any one.

Id. at 478-79.

¶21 More recently in Gradinjan v. Boho, 29 Wis. 2d 674, 139 N.W.2d 557 (1966), we examined a statute that prohibited counting absentee ballots if they were not properly authenticated by a municipal clerk. We upheld the constitutionality of the statute, while explaining that, "the right of a qualified elector to cast his ballot for the person of his choice cannot be destroyed or substantially impaired. However, the legislature has the constitutional power to say how, when, and where his ballot shall be cast." Id. at 684-85 (quoting State ex rel. Frederick v. Zimmerman, 254 Wis. 600, 613, 37 N.W.2d 473 (1949)).

### 4. The League's Article III challenges

#### i. additional elector qualification

¶22 The League's major argument is that Act 23 is unconstitutional because being required to present Act 23-acceptable photo identification is an additional elector qualification beyond what is listed in Article III, Section 1 of the Wisconsin Constitution. As provided in full above, Section 1 requires that an elector be a United States citizen, at least 18 years of age, a resident of Wisconsin and a resident of the district in which the elector offers to vote.

¶23 We agree with the League that the legislature cannot add to these qualifications for electors. As we explained in

11

State ex rel. La Follette v. Kohler, 200 Wis. 518, 228 N.W. 895 (1930), "[t]he persons who may exercise the right of suffrage and the day of election are fixed by the constitution." Id. at 548. However, we also noted that "[t]hese provisions are not and were never intended to be self-executing or exclusive of regulation in other respects. . . . [T]he power to prescribe the manner of conducting elections is clearly within the province of the legislature." Id.

¶24 As we have explained, "the legislature has the constitutional power to say how, when, and where" elections shall be conducted. Frederick, 254 Wis. at 613. The mode and manner of conducting an election includes the legislature's ability "to require any person offering to vote, to furnish such proof as it deems requisite, that he is a qualified elector." Cothren, 9 Wis. at 258 (*283-84).

¶25 Although requiring any person offering to vote to identify that he or she is a qualified elector is a straightforward and longstanding proposition to which we have uniformly adhered, we briefly discuss two cases decided shortly after the ratification of the state constitution to illustrate the principle. The first is State ex rel. Knowlton v. Williams, 5 Wis. 308 (1856). The plaintiff in Knowlton challenged a vote to move the La Fayette County seat from Shullsburg to Avon. Id. at 309. Part of that act provided that "no person shall be deemed qualified to vote upon the question of the removal of the county seat provided for in this act, unless he shall have

resided in the town where he offers to vote at least thirty days." Id. at 309-10.

¶26 At that time, Article III provided that "[e]very male person of the age of twenty-one years or upwards, of the following classes, who shall have resided in this State for one year next preceding any election, shall be deemed a qualified elector." Wis. Const. Art. III, § 1 (1848). None of the subsequent classes added further residency requirements. Futhermore, unlike the present version of Article III, the original state constitution did not grant the legislature the authority to define residency. As such, we concluded that the law's 30-day residency requirement constituted an additional elector qualification that the legislature was not empowered to impose. Knowlton, 5 Wis. at 311.[9]

¶27 The second case, Cothren, involved another challenge to a vote to move a county seat. Cothren, 9 Wis. 254 (*279). Plaintiffs disputed the results of the vote based on a challenge to a law that permitted election officials to question a voter whose qualifications to vote were challenged. Id. at 257-58 (*283). Specifically, the law allowed election officials to ask an elector "a series of questions . . . calculated to draw out from such person the truth as to whether such cause of challenge existed against him or not." Id. at 258 (*283).

---

[9] See also State ex rel. Cornish v. Tuttle, 53 Wis. 45, 50, 9 N.W. 791 (1881) (invalidating a village charter provision establishing a 20-day residency requirement in order to vote for municipal officers).

¶28 Article III made (and still makes) no mention of the requirement that an elector answer questions or identify himself or herself. Nonetheless, we upheld the law with reasoning similar to Knowlton, concluding that "instead of prescribing any qualifications for electors different from those provided for in the constitution, [the law] contain[ed] only new provisions to enable the inspectors to ascertain whether the person offering to vote possessed the qualifications required by [the constitution]." Id. Stated otherwise, requiring an elector to demonstrate his or her constitutional qualifications to vote does not constitute an additional elector qualification.

¶29 The League agrees that the legislature has the authority to pass laws that allow election officials to ascertain whether a potential voter possesses the constitutional qualifications required of an elector. As the League acknowledges, this includes the ability to require a potential voter to identify himself or herself in some fashion, thereby answering the question, "Are you who you say you are, a constitutionally qualified elector?"

¶30 The focus of the League's argument is that Act 23's presentation requirement goes beyond such authority because it "bars constitutionally qualified voters from voting." This argument fails for several reasons.

¶31 First, as the court of appeals noted, under the League's proposed logic, "virtually any requirement placed on voters would be an unconstitutional and impermissible additional 'qualification.'" League of Women Voters of Wis. Educ. Network,

14

<u>Inc. v. Walker</u>, 2013 WI App 77, ¶66, 348 Wis. 2d 714, 834 N.W.2d 393.  Stated otherwise, if the League were correct, mode and manner requirements for voting would not be permissible because the State could not enforce them.

¶32 Second, and more important, the League's argument fails under <u>Cothren</u>, which similarly prohibited a constitutionally qualified elector from voting because he refused to identify himself by answering a series of questions. Notwithstanding <u>Cothren</u>, the League now makes the same argument we flatly rejected in that case:

> It is true that § 14 provides that if any person challenged refused to answer, his vote should be rejected.  But does that make the answering of the questions a new qualification for a voter?  Certainly not.  Under the law, as it before existed, any one whose vote was challenged had to take an oath that he possessed the qualifications required by the constitution.  If he refused, his vote was rejected. But this did not make the taking of the oath a new qualification, so as to invalidate the law.  It was rejected only because he failed to furnish the proof required by law, showing his right to vote.

<u>Cothren</u>, 9 Wis. at 258-59 (*284).[10]  As such, that an elector must comply with Act 23 in order to vote cannot reasonably be said to impose an additional elector qualification.

---

[10] <u>See also</u> <u>Gradinjan v. Boho</u>, 29 Wis. 2d 674, 682-83, 139 N.W.2d 557 (1966) (quoting <u>Anderson v. Budzien</u>, 12 Wis. 2d 530, 533-34, 107 N.W.2d 496 (1961)) ("To prevent fraud, the legislature in some instances has specifically stated that there must be strict compliance with a statute or a ballot cannot be counted. . . .  [C]ompliance with those provisions is mandatory.").

15

¶33 This conclusion is bolstered by other ways in which an elector who fails to comply with indisputably valid election laws can lose the opportunity to vote. For example, an elector who fails to arrive at a polling location on time can lose his right to vote in that election. Therefore, although the elector is a United States citizen, over the age of 18, and a resident of the election district in which he or she offers to vote, if the elector does not arrive at a polling place between the hours of 7 a.m. and 8 p.m., and is not voting absentee, the elector may lose his right to vote in that election. Wis. Stat. § 6.78(4). The same holds true for an elector who fails to arrive at the correct polling place. Wis. Stat. § 6.77(1). Yet none of these laws that affect the manner of voting can be seriously characterized as additional elector qualifications.

¶34 Moreover, we note that Act 23 has a safeguard for electors who do not present an acceptable form of identification when offering to vote. In that instance, an elector may cast a provisional ballot. Wis. Stat. § 6.97. If the elector presents an acceptable form of identification by 4 p.m. on the Friday after the election, his or her vote will be counted. § 6.97(3)(b).

¶35 For these reasons, we conclude that being required to present Act 23-acceptable photo identification prior to voting is not an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution; but rather, it is a mode of identifying those who possess constitutionally required qualifications.

16

¶36 Our decision is this regard is supported by the decisions of courts in other jurisdictions that have considered whether the requirement of presenting photo identification prior to voting is an additional elector qualification. For example, in City of Memphis v. Hargett, 414 S.W.3d 88 (Tenn. 2013), the Tennessee Supreme Court considered the same constitutional challenge the League presents to us. Id. at 108. The court began by reviewing the Tennessee Constitution, which required that "one must be at least eighteen years of age, a United States citizen, a Tennessee resident . . . and registered to vote." Id.

¶37 In rejecting the contention that the photo identification requirement imposed by the Tennessee law was an additional voter qualification, the court concluded that "the photo ID requirement is more properly classified as a regulation pertaining to an existing voting qualification." Id. at 109. The court explained that photo identification was merely a "mode of ascertaining" whether the potential voter possessed the necessary constitutional qualifications to vote. Id. (quoting Trotter v. City of Maryville, 235 S.W.2d 13, 19 (Tenn. 1950)) (further citation omitted).

¶38 In Democratic Party of Ga., Inc. v. Perdue, 707 S.E.2d 67 (Ga. 2011), the Georgia Supreme Court addressed whether requiring the presentation of government-issued photo identification to identify qualified voters was an additional voter qualification. The court explained that the right to vote is guaranteed by the Georgia Constitution, and it cannot be

17

denied or taken away by legislative enactment. Id. at 72. However, the legislature may prescribe "reasonable regulations as to how these qualifications shall be determined." Id. Thereafter, the court concluded that photo identification was "a reasonable procedure for verifying that the individual appearing to vote in person is actually the same person who registered to vote." Id.

¶39 In League of Women Voters of Ind., Inc. v. Rokita, 929 N.E.2d 758 (Ind. 2010), the Indiana Supreme Court rejected the additional qualification contention that is made by the League before us. The court first explained that the legislature could "not by statutory enactment add a substantive qualification to the right to vote." Id. at 767. However, the court further explained that "[r]equiring qualified voters to present a specified form of identification is not in the nature of such a personal, individual characteristic or attribute but rather functions merely as an election regulation to verify the voter's identity." Id.

¶40 Although none of the state constitutions is word for word identical with Article III, Section 1 of the Wisconsin Constitution, the reasoning of all three supreme courts is consistent with our own set out above. Accordingly, we now turn to Article III, Section 2, which expressly permits the legislature to provide for registration of voters.

## ii. registration

¶41 In addition to the authority to "require any person offering to vote[] to furnish such proof as it deems requisite[]"

18

that he is a qualif[i]ed elector," Cothren, 9 Wis. at 258 (*283-84), the legislature may pass five types of election-related laws pursuant Article III, Section 2 of the Wisconsin Constitution. One of those enumerated types are laws that "[p]rovid[e] for registration of electors." Wis. Const. Art. III, § 2(2).

¶42 The court of appeals succinctly summarized the current registration system as follows:

> Election officials compile registration information into "poll lists" for use at polling places, containing "the full name and address of each registered elector." Wis. Stat. § 6.36(2) (2009-10); Wis. Stat. § 6.36(2). Thus, poll lists memorialize who is registered to vote in a given election in a given voting district and they play a critical role in the voting process both pre- and post-Act 23. When a potential voter arrives at the polling place for his or her residence in a given election, he or she "shall state his or her full name and address" to election officials, who "shall verify that the name and address" provided match the name and address on the poll list. Wis. Stat. § 6.79(2)(a) (2009-10); Wis. Stat. § 6.79(2)(a).

League of Women Voters, 348 Wis. 2d 714, ¶15 (footnote omitted).

¶43 Requiring an elector to identify himself or herself by stating his or her full name and address is unquestionably part of the registration process. After all, there would be no point to compiling a list of registered electors if there were no means by which to ascertain if the person offering to vote was an elector appearing on the list. Identification of registered voters by a government-issued photo identification is the mode of identification that the legislature has chosen.

19

¶44 Based on the League's arguments before us, we can see no meaningful grounds on which to distinguish the photo identification requirement from the requirement that an elector state his or her full name and address in order to verify that it matches the registration list. Both requirements permit use of registration lists to verify at the polling place that the potential voter is registered. An elector who fails to comply with either procedure cannot vote. Furthermore, the League does not rely on the difficulty and inconvenience of procuring an Act 23-acceptable form of identification.[11] Therefore, the ease with which most electors will be able to state their names and addresses is not relevant to our decision in this case.

¶45 We now address the League's remaining argument, that Act 23 fails an independent reasonableness requirement.

### iii. reasonableness

¶46 According to the League, even laws that do not constitute an additional qualification under Article III, Section 1 or that come within one of the five types of election-related laws under Article III, Section 2 must be "reasonable" to pass constitutional muster. Act 23 fails this requirement,

---

[11] In NAACP, Act 23 was subjected to a very different challenge than that brought by the League. There, plaintiffs submitted evidence to develop their allegation that obtaining Act 23-acceptable photo identification imposed unconstitutional burdens of time, inconvenience and cost on the right to vote and that Act 23 was not reasonably necessary to effect a significant government interest. NAACP, 2014 WI 98, ¶2, __ Wis.2d __. Accordingly, we employed a more nuanced test, under which the severity of the burden on the right to vote dictates the level of scrutiny that is applied.

20

according to the League, because "it destroys the right of a qualified elector to cast a ballot" and "it does nothing to preserve and promote the constitutional right to vote."

¶47 We acknowledge that in upholding various election regulations we have couched some of our decisions in terms of "reasonableness." E.g., McGrael, 144 Wis. at 17-18 (explaining that laws regulating voting methods are enacted through the legislature's use of police power, and accordingly, they must be reasonable exercises of that power). Therefore, in order to meet the League's argument, we assume without deciding, that reasonableness functions as an independent limit on election regulation.

¶48 In State ex rel. Van Alstine v. Frear, 142 Wis. 320, 125 N.W. 961 (1910), we considered a challenge to statutorily established primary elections. Id. at 322-23. In addressing the claim that the election regulation bore unconstitutionally on the right to assemble, we explained that "[s]uch rights have always been held to be subject to reasonable regulation." Id. at 337 (citing Freund, Police Power, § 480; further citations omitted). We noted that "[s]uch regulations, within reasonable limits, strengthen and make effective the constitutional guaranties instead of impairing or destroying them." Id. (quoting State ex rel. Runge v. Anderson, 100 Wis. 523, 533-34, 76 N.W. 482 (1898)).

¶49 Accordingly, given our discussions of the use of police power when enacting laws bearing on elections, we understand the League's argument to be that when the legislature

21

regulates elections, its use of police power is limited to legislation that does not destroy or impair, but rather, preserves and promotes the right to vote. Stated otherwise, if the legislation does not do so, it is "unreasonable."

¶50 While we agree with the League that election laws must not destroy or impair the right to vote, Act 23's presentation requirement does not do so. As we explained in part above, requiring a potential voter to identify himself or herself with government-issued photo identification does not destroy or impair the right to vote. Identification by the use of Act 23-acceptable photo identification is the mode of ascertaining that the potential voter is a constitutionally qualified elector. Because the legislature has the power to regulate in ways that affect the mode and manner of conducting elections and Act 23-acceptable photo identification is a mode of ascertaining the identity of electors, it is reasonable. See Kohler, 200 Wis. at 548; Frederick, 254 Wis. at 613; Cothren, 9 Wis. at 258 (*283-84).

¶51 Furthermore, we have little trouble concluding that Act 23's presentation requirement is a law that could "strengthen and make effective the constitutional guarant[y]" of suffrage. See Runge, 100 Wis. at 534. In a more recent context, in Crawford, the United States Supreme Court concluded that voter identification laws serve unquestionably legitimate purposes: (1) "safeguarding voter confidence"; (2) "improv[ing] and moderniz[ing] election procedures"; and (3) "deterring and detecting voter fraud." Crawford, 553 U.S. at 191. Each of

22

these purposes is reasonable precisely because it could preserve and promote the right to vote.

¶52 For instance, photo identification could enhance the integrity of elections because "[t]he electoral system cannot inspire public confidence if no safeguards exist . . . to confirm the identity of voters." Id. at 194 (quoting Report of the Commission on Federal Election Reform, Building Confidence in U. S. Elections § 2.5 (Sept. 2005)). Increased confidence in the elector system, in turn, "encourages citizen participation in the democratic process." Id. at 197.

¶53 Also, the presentation of photo identification "is to some extent, a condition of our times. Many important personal interactions are being modernized to require proof of identity with photo identification." NAACP, 2014 WI 98, ¶44, __ Wis. 2d __. Crawford also noted that the modern approach to identification is moving toward photo identification. Crawford, 553 U.S. at 192.

¶54 Additionally, voter identification laws could detect and deter fraud thereby ensuring that a constitutionally qualified elector's vote is not diluted by fraudulent votes.[12] This could preserve and promote the right to vote by assuring

---

[12] A recent filing in Milwaukee County demonstrates that voter fraud is a concern. See State v. Monroe, 2014CF2625 (June 20, 2014), wherein the Milwaukee County District Attorney's office filed a criminal complaint against Robert Monroe that alleged 13 counts of voter fraud, including multiple voting in elections and providing false information to election officials in order to vote.

that a constitutionally qualified elector's vote counts with full force and is not offset by illegal ballots. See Reynolds v. Sims, 377 U.S. 533, 555 (1964).

¶55 In areas such as election regulation, "[w]here a legislature has significantly greater institutional expertise," courts generally defer to legislative judgments. Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 402 (2000) (Breyer, J., concurring). Therefore, rather than "asking whether the statute burdens any one such interest in a manner out of proportion to the statute's salutary effects upon the others," courts employ a presumption of constitutionality. Id. In so doing, we decline to evaluate whether Act 23 is the best way to preserve and promote the right to vote, such "policy determinations . . . are not properly addressed to the members of the Supreme Court of Wisconsin." MTI v. Walker, 2014 WI 99, ¶181, __ Wis.2d __, __ N.W.2d __ (Crooks, J., concurring). Instead, we conclude that Act 23 is a reasonable way to do so.

¶56 And finally, employing the presumption of constitutionality in the present case, we conclude that the League has failed to prove that presenting an Act 23-acceptable photo identification is unconstitutional beyond a reasonable doubt. Furthermore, Act 23's presentation requirement is a reasonable voter regulation that is supportive of the State's significant interests in promoting voter confidence in the outcome of elections, improving and modernizing election procedures and deterring voter fraud.

24

### III. CONCLUSION

¶57 We conclude that the League has failed to prove Act 23 unconstitutional beyond a reasonable doubt. The legislature did not exceed its authority under Article III of the Wisconsin Constitution when it required electors to present Act 23-acceptable photo identification. Since 1859, we have held that "it is clearly within [the legislature's] province to require any person offering to vote[] to furnish such proof as it deems requisite[] that he is a qualif[i]ed elector." Cothren, 9 Wis. at 258 (*283-84). Requiring a potential voter to identify himself or herself as a qualified elector through the use of Act 23-acceptable photo identification does not impose an elector qualification in addition to those set out in Article III, Section 1 of the Wisconsin Constitution.

¶58 We also conclude that the requirement to present Act 23-acceptable photo identification comes within the legislature's authority to enact laws providing for the registration of electors under Article III, Section 2 because Act 23-acceptable photo identification is the mode by which election officials verify that a potential voter is the elector listed on the registration list.

¶59 Finally, we conclude that plaintiffs' facial challenge fails because Act 23's requirement to present photo identification is a reasonable regulation that could improve and modernize election procedures, safeguard voter confidence in the outcome of elections and deter voter fraud. See Crawford, 553

25

U.S. at 191. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is modified and as modified, affirmed; injunction vacated; cause remanded to circuit court to dismiss the complaint.

¶60 N. PATRICK CROOKS, J. (concurring) In bringing a purely facial challenge to Act 23, Wisconsin's voter photo identification law, the plaintiffs have undertaken what is, according to the United States Supreme Court, "of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."[1] Because the majority applies the presumption of constitutionality and requires that the plaintiffs prove that the statute is unconstitutional beyond a reasonable doubt, I join that holding and the mandate. I write separately to emphasize that the result in this case is compelled by the framework of law that we are bound to apply. As has been recognized in other cases, it is often true that the standard of review and the applicable analysis dictate the outcome.[2] That is the case here.

¶61 The question we must answer is not whether the voter photo identification law is good policy, but whether we can say

_____

[1] United States v. Salerno, 481 U.S. 739, 745 (1987).

[2] See Gibson v. State, 47 Wis. 2d 810, 819-20, 177 N.W.2d 912, 917 (1970) (holding that presumption that counsel has fulfilled his duty of proper representation "is dispositive of the defendant's claim" where there was no evidence to the contrary) and Wisconsin Dep't of Revenue v. Menasha Corp., 2008 WI 88, ¶109, 311 Wis. 2d 579, 754 N.W.2d 95 (Crooks, J., concurring) (stating that "resolving the issue of deference is key to a correct decision in this case"), and David R. Dow, The Equal Protection Clause and the Legislative Redistricting Cases-Some Notes Concerning the Standing of White Plaintiffs, 81 Minn. L. Rev. 1123, 1130 (1997) (stating that in redistricting cases, for example, "The issue of which standard of review to use is pivotal because the choice of standard typically dictates the outcome.")

1

beyond a reasonable doubt that Act 23 violates the Wisconsin Constitution on any of the grounds claimed by these plaintiffs. As a purely facial challenge, this challenge is distinct from the challenge raised by plaintiffs in Milwaukee NAACP v. Walker, 2014 WI 98, ___ Wis. 2d ___, ___ N.W.2d ___ (raising a challenge similar to that raised in Crawford v. Marion County Election Bd., 553 U.S. 181 (2008), and providing a record with evidence of the Act's burden on individual Wisconsin residents). Given the framework within which the question must be answered, I agree with the holding of the majority that the plaintiffs have not shown beyond a reasonable doubt that the statute is unconstitutional and I join that holding and the mandate. I can reach no other conclusion than to uphold Act 23 based on the purely facial challenge here. I therefore respectfully concur.

## I. THE ANALYTICAL FRAMEWORK

¶62 With this type of facial challenge, the odds are against the plaintiffs at every turn. A court is bound to recognize the presumption that the statute is constitutional.[3] Here, the plaintiffs must prove otherwise beyond a reasonable doubt.[4] In considering such a challenge, a court must "resolve any doubt about the constitutionality of a statute in favor of upholding the statute."[5]

---

[3] Tammy W. G. v. Jacob T., 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854.

[4] State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328.

[5] Monroe Cnty. Dep't of Human Servs. v. Kelli B., 2004 WI 48, ¶16, 271 Wis. 2d 51, 2 678 N.W.2d 831.

¶63 In short, the question before us in this case is not whether the Act is good policy, not whether it accomplishes what it sets out to do, and not whether it is unfair under some circumstances to some individuals. The question before us in this case is solely this: starting with a presumption of constitutionality in its favor, are we are persuaded beyond a reasonable doubt that the statute violates the Wisconsin Constitution in every circumstance?

## II. EVALUATING PLAINTIFFS' CHALLENGE

¶64 The plaintiffs argue that requiring a voter to show photo identification is flatly outside the legislature's power because it impermissibly adds a qualification to the three elector qualifications listed in the Wisconsin Constitution: a United States citizen, aged 18 or older, and a resident of an election district in Wisconsin.[6]

¶65 The plaintiffs argue that case law explicitly states that "an act of the legislature which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, cannot be sustained"[7] and "it is incompetent for the legislature to add any new qualifications for an elector."[8] Furthermore, the plaintiffs contend that

> "[t]he elector possessing the qualifications
> prescribed by the constitution is invested with the

---

[6] Wis. Const. art. III, § 1, states "Every United States citizen age 18 or older who is a resident of an election district in this state is a qualified elector of that district."

[7] Knowlton v. Williams, 5 Wis. 308, 316 (1856).

[8] Cothren v. Lean, 9 Wis. 279, 283 (1859).

3

constitutional right to vote at any election in this state. These qualifications are explicit, exclusive, and unqualified by any exceptions, provisos or conditions, and the constitution, either directly or by implication, confers no authority upon the legislature to change, impair, add to or abridge them in any respect."[9]

The plaintiffs cite Dells v. Kennedy[10] for the proposition that even permitted regulation of elections must be reasonable; they contend that this photo identification requirement is, on its face, unreasonable and must be struck down. The plaintiffs also contend that the Act does not fall into any of the categories of laws that the legislature is permitted to pass under its constitutional authority to regulate elections.[11]

¶66 However, as the court of appeals correctly and concisely stated, each of these arguments is ultimately unpersuasive in the context of this particular type of facial challenge:

> First, we conclude that the League's "additional qualification" argument is defeated by concessions the League makes and by Wisconsin Supreme Court precedent

---

[9] Dells v. Kennedy, 49 Wis. 555, 556, 6 N.W. 246 (1880).

[10] Dells, 49 Wis. 555, 558 (stating that "a registry law can be sustained only, if at all, as providing a reasonable mode or method by which the constitutional qualifications of an elector may be ascertained and determined, or as regulating reasonably the exercise of the constitutional right to vote at an election" (emphasis added)).

[11] Article III, Section 2 of the Wisconsin Constitution states, "Laws may be enacted: (1) Defining residency. (2) Providing for registration of electors. (3) Providing for absentee voting. . . . "

4

addressing the authority of the legislature to enact laws allowing officials to ascertain at the polls which potential voters are qualified to vote. The League has not shown that the photo identification requirement is on its face an "additional qualification" for voting, as opposed to a voter registration regulation that allows election officials "to ascertain whether the person offering to vote possessed the qualifications required." See State ex rel. Cothren v. Lean, 9 Wis. 254, [*279], 258, [*283] (1859).

Second, we reject the League's additional, implied argument that the requirement is unconstitutional under the Article III right to suffrage because it imposes a restriction that is, on its face, so burdensome that it effectively denies potential voters their right to vote, and is therefore constitutionally "unreasonable." We express no opinion as to whether such an argument might have merit if supported by fact finding regarding the burdens imposed. However, in this facial challenge in which the League does not rely on any fact finding or evidentiary material, the implied argument falls short.

Finally, as to the argument that, even if the requirement is not an "additional qualification" or constitutionally "unreasonable," the legislature exceeded its authority in enacting it, we conclude that this argument collapses with a concession by the League, which we believe is a warranted concession. The concession is that the legislature has implicit but broad constitutional authority to establish a voting registration system under which election officials may require potential voters to identify themselves as registered voters, including by requesting photo identification.

League of Women Voters v. Walker, 2013 WI App 77, ¶¶3-5, 348 Wis. 2d 714, 834 N.W.2d 393.

¶67 The problem for the plaintiffs is that implicit in and essential to the registration process is the necessity of confirming the identity of the voter at the polling place. A facial challenge to a more onerous identification requirement,

5

such as a requirement for every voter to show a current passport or a group of documents, might conceivably be successful, but a facial challenge to a requirement of the kind of photo identification requirements at issue here cannot prevail.  The test for a purely facial challenge, as noted before, is not whether the law is <u>ever</u> unconstitutional but whether it is <u>always</u> and <u>in every application</u> unconstitutional.

## III.   CONCLUSION

¶68 The question here is not whether the photo voter identification law is good policy, but whether the plaintiffs have proved beyond a reasonable doubt that the Act violates the Wisconsin Constitution on any of the grounds claimed by these plaintiffs.  Given the framework within which the question must be answered, I agree with the holding of the majority that the plaintiffs have not shown beyond a reasonable doubt that the statute is unconstitutional, and I join that holding and the mandate.  I can reach no other conclusion than to uphold Act 23 based on the purely facial challenge here.  I therefore respectfully concur.

¶69 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*.

> Who are to be the electors . . . ? Not the rich, more than the poor; not the learned, more than the ignorant; not the haughty heirs of distinguished names, more than the humble sons of obscurity and unpropitious fortune. The electors are to be the great body of the people of the United States.

The Federalist No. 57 (1788) (James Madison).

¶70 Today the court follows not James Madison——for whom Wisconsin's capital city is named——but rather Jim Crow——the name typically used to refer to repressive laws used to restrict rights, including the right to vote, of African-Americans.

¶71 Indeed the majority opinion in NAACP v. Walker[1] brings the specter of Jim Crow front and center. It invalidates costs incurred by a qualified Wisconsin voter to obtain an Act 23 photo ID as an illegal de facto poll tax.[2]

¶72 The right to vote is "a sacred right of the highest character."[3] The Wisconsin Constitution explicitly confers the right to vote upon all qualified individuals as specified in Article III, Section 1 of the Constitution:

---

[1] NAACP v. Walker, 2014 WI 98, ___ Wis. 2d ___, ___ N.W.2d ___, mandated of even date.

[2] State and federal courts in the Jim Crow era rejected challenges to literacy tests, Lassiter v. Northampton County Bd. of Elections, 360 U.S. 45 (1959), and poll taxes, Breedlove v. Suttles, 302 U.S. 277 (1937), and onerous registration requirements that functionally deprived millions of the right to vote. Asserting that the legislature had broad powers to determine the conditions under which the right of suffrage may be exercised, the courts turned a blind eye to the effects of these tests on the electorate, especially African-Americans.

[3] State v. Phelps, 144 Wis. 1, 15, 128 N.W. 1041 (1910).

> Every United States citizen age 18 or older who is a
> resident of an election district in this state is a
> qualified elector of that district.

So fundamental and sacred is the right to vote, the Wisconsin Constitution allows legislative regulation of voting in only a few enunciated areas. Wis. Const. art. III, § 2.[4]

¶73 The right to vote is "a fundamental political right, because [it is] preservative of all rights."[5] Accordingly, the right to vote is the most protected of rights:

> The right of a qualified elector to cast a ballot for
> the election of a public officer, which shall be free
> and equal, is one of the most important of the rights

---

[4] Article III, Section 2 of the Wisconsin Constitution provides:

Laws may be enacted:

(1) Defining residency.

(2) Providing for registration of electors.

(3) Providing for absentee voting.

(4) Excluding from the right of suffrage persons:

   (a) Convicted of a felony, unless restored to civil rights.

   (b) Adjudged by a court to be incompetent or partially incompetent, unless the judgment specifies that the person is capable of understanding the objective of the elective process or the judgment is set aside.

(5) Subject to ratification by the people at a general election, extending the right of suffrage to additional classes.

[5] Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886). See also Reynolds v. Sims, 377 U.S. 533, 562 (1964) (right to vote is "a fundamental political right . . . preservative of all rights.") (quoting Yick Wo, 118 U.S. at 370).

2

guaranteed to him [or her] by the constitution. If citizens are deprived of that right, which lies at the very basis of our Democracy, we will soon cease to be a Democracy. For that reason, no right is more jealously guarded and protected by the departments of government under our constitutions, federal and state, than is the right of suffrage. It is a right which was enjoyed by the people before the adoption of the constitution and is one of the inherent rights which can be surrendered only by the people and subjected to limitation only by the fundamental law.

State ex rel. Frederick v. Zimmerman, 254 Wis. 600, 613, 37 N.W.2d 473 (1949) (emphasis added).

¶74 When an individual who is qualified under the Wisconsin Constitution goes to the polls to vote, no legislative action may prevent that person from casting a ballot:

> [A]n act of the legislature which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, cannot be sustained.

State ex rel. Knowlton v. Williams, 5 Wis. 308, 316 (1856).

¶75 Yet under the majority opinion, an individual who has fulfilled every requirement to vote——he or she is a citizen of the United States, is a resident of Wisconsin, is over the age of 18, and is registered——can nonetheless be denied the right to vote for failing to produce a government-issued photo identification enumerated in Act 23,[6] such as a driver's license or receipt therefore, a State identification card or receipt therefore, a military identification card, a United States passport, certain certificates of United States naturalization,

---

[6] I refer to these enumerated photo identifications as "Act 23 photo ID."

3

an identification by a federally recognized tribe, or certain university and college identification cards.[7]

---

[7] Section 1 of 2011 Wis. Act 23 reads as follows:

5.02(6m) of the statutes is created to read:

5.02(6m) "Identification" means any of the following documents issued to an individual:

(a) One of the following documents that is unexpired or if expired has expired after the date of the most recent general election:

1. An operator's license issued under ch. 343.

2. An identification card issued under s. 343.50.

3. An identification card issued by a U.S. uniformed service.

4. A U.S. passport.

(b) A certificate of U.S. naturalization that was issued not earlier than 2 years before the date of an election at which it is presented.

(c) An unexpired driving receipt under s. 343.11.

(d) An unexpired identification card receipt issued under s. 343.50.

(e) An identification card issued by a federally recognized Indian tribe in this state.

(f) An unexpired identification card issued by a university or college in this state that is accredited, as defined in s. 39.30(1)(d), that contains the date of issuance and signature of the individual to whom it is issued and that contains an expiration date indicating that the card expires no later than 2 years after the date of issuance if the individual establishes that he or she is enrolled as a student at the university or college on the date that the card is presented.

¶76 These Act 23 photo IDs are not mandated in the Wisconsin Constitution as a qualification to vote.[8]

¶77 The State may require verification of the identity of the voter, but Act 23 severely restricts and limits the form of identification that enables a qualified voter to cast a ballot. Rather than merely verify identity, Act 23's requirement conditions the right to vote on possession of a restricted list of identifying documents; no other form of proof of identity than an Act 23 photo ID allows a qualified voter to verify identity and cast a ballot. By restricting verification of identity to only certain government-issued photo IDs, Act 23 does not condition the right to vote on verification of identity. Instead, Act 23 conditions the right to vote on production of a particular identity card. Requiring a specific photo ID is an additional qualification on the right to vote, and is therefore impermissible under the Wisconsin Constitution.

¶78 Without any evidence that in-person voter impersonation is a problem in Wisconsin,[9] the voting restrictions that the majority opinion approves today give Wisconsin the most restrictive voting laws in America,[10] laws that systematically

---

[8] Not every government-issued photo ID satisfies Act 23. Act 23 does not allow an individual to use a Veteran's ID card, the photo ID that the United States Department of Veterans Affairs issues when veterans leave the military, or an ID from one of Wisconsin's two-year technical colleges.

[9] NAACP, 2014 WI 98, ¶¶134-136 (Crooks, J., dissenting).

[10] For a helpful list of voter registration and identification requirements from across the country, see National Conference of State Legislatures, Voter Identification Requirements, tbl. 2, http://www.ncsl.org/research/elections-and-campaigns/voter-id.aspx (last visited July 14, 2014).

disenfranchise entire classes of individuals who are without the required Act 23 photo ID. For example, an estimated 23 percent of persons aged 65 and over do not have a Wisconsin driver's license or other Act 23 photo ID.[11]

¶79 Qualified and registered Wisconsin individuals who voted in the last election may be barred from voting in the next election under today's majority opinions in NAACP and the instant case unless they obtain an Act 23 photo ID. Their vote is now contingent upon possession of a specific ID, not their constitutional qualifications to vote or their identity. The possession of an Act 23 photo ID may be further contingent on the discretion of an agency administrator who determines whether an individual can obtain an Act 23 photo ID.[12] "These disenfranchised citizens would certainly include some of our friends, neighbors, and relatives."[13]

---

No other state requires the production of one of a list of permissible government-issued photo identifications as in Act 23, and no other state forbids other methods of voter identity verification such as affidavit, as does Act 23.

[11] In contrast, 99% of Indiana's voting age population possessed photo IDs that complied with the new Indiana law. Crawford v. Marion County Elections Bd., 553 U.S. 181, 188 n.6 (2008).

[12] See NAACP, 2014 WI 98, ¶67.

[13] Circuit court op. at 9.

We would ignore reality were we not to recognize that the requirements of Act 23 fall with unequal weight on voters according to economic status. See Bullock v. Carter, 405 U.S. 134, 144 (1972); see also NAACP, 2014 WI 98, ¶¶123-129 (Crooks, J., dissenting).

6

¶80 I write in dissent to discuss both the instant case and the NAACP case.

¶81 First, the two cases address the constitutionality of the same Act 23 but are inconsistent.

¶82 According to NAACP, the fees imposed to obtain an Act 23 photo ID constitute an impermissible de facto poll tax.[14] Thus Act 23 creates an unconstitutional precondition on the right to vote, according to NAACP. A charge to comply with Act 23 creates a severe and unconstitutional burden on the right to vote, according to NAACP.[15]

¶83 In the instant case, the court, addressing the same Act 23, concludes that no precondition to voting has been created. This inconsistency between the two cases is unexplained.

¶84 How can the de facto poll tax be unconstitutional in the NAACP case, while the court declares all of Act 23 constitutional in the instant case as not imposing any additional qualifications for voters? Isn't NAACP precedential in the instant case?

¶85 Additionally, the NAACP majority opinion is internally inconsistent in failing to invalidate various fees and costs associated with obtaining documentation necessary to obtain an Act 23 photo ID. Fees and costs imposed on a person constitutionally qualified to vote are an integral part of the Act 23 photo ID requirement.

---

[14] See NAACP, 2014 WI 98, ¶83 n.9 (Crooks, J., dissenting).

[15] NAACP, 2014 WI 98, ¶¶61-65.

7

¶86 Second, I articulate the key principles from our case law that guide the high and exacting standard of judicial scrutiny required for review of legislation regulating the right to vote.

¶87 Neither NAACP nor the instant case applies Wisconsin's voting rights jurisprudence to interpret the Wisconsin Constitution in the present case.

¶88 Indeed, the two opinions apply different standards of review to gauge the constitutionality of Act 23 under Article III of the Wisconsin Constitution. How can that be? The same Act 23 is challenged in both cases as unconstitutional under Article III of the state constitution. Both cases present a facial challenge. The plaintiffs in both cases assert that Act 23 imposes a burden on qualified voters. No persuasive reason is given for the different standards of review in the two cases.

¶89 Our state's case law outlines key principles that protect the right to vote in the face of legislative election regulations. The "presumption of constitutionality"[16] applied by the majority opinion in the instant case is wholly inappropriate under longstanding state law for the protection of the fundamental, sacred right to vote.

¶90 Third, I apply the principles of the Wisconsin voting rights cases to the instant case and conclude that the League of Women Voters and the circuit court are correct: Act 23 unconstitutionally adds a qualification to the right to vote.

---

[16] Majority op., ¶¶16-17; concurrence, ¶¶62-63.

8

¶91 If a qualified voter fails to produce an Act 23 photo ID, Act 23 bars that person from voting even though that voter meets all the qualifications enumerated in the Wisconsin Constitution and meets all the statutory voter registration requirements. Thus Act 23 deprives qualified, registered Wisconsin voters of the right to vote, based solely on their failure to meet a legislatively established precondition to voting. Such deprivation amounts to an impermissible legislative amendment of the Wisconsin Constitution to add a voter qualification.

¶92 Today's holding, along with the holding in NAACP, undermines the very foundation of our democracy and deprives individuals of the most sacred of constitutional rights through no fault of their own.[17]

¶93 Act 23 is facially unconstitutional and void. This court cannot rewrite Act 23 to make it constitutional. That task is for the legislature.

¶94 Accordingly, I dissent.

I

¶95 The opinions in the instant case and NAACP are inconsistent. If Act 23 imposes a de facto poll tax in NAACP, does it not impose a de facto poll tax in the instant case? The majority opinion and Justice Crooks' dissent in NAACP recognize that Act 23 in effect creates, in whole or in part, facially

---

[17] Dells v. Kennedy, 49 Wis. 555, 557, 6 N.W. 246 (1880).

unconstitutional restrictions on the right to vote.[18]  The holding of NAACP is precedential and governs the instant case.

¶96  The NAACP majority opinion follows the lead of the United States Supreme Court in Harper v. Virginia State Board of Elections, 383 U.S. 663 (1966), which finally struck down poll tax laws that were created to burden African-American voters.[19]

¶97  In Harper, the Court struck down a $1.50 poll tax on the ground that "payment of any fee" to a Virginia governmental entity could not be required as a precondition of voting. Although the Harper Court discussed the uneven impact such a fee may have on those with limited financial resources, the Court struck down the fee for all voters.  The Harper Court declared that payment of a fee to vote is invidious discrimination and has no relation to voter qualifications:

> [W]e must remember that the interest of the State, when it comes to voting, is limited to the power to fix qualifications. Wealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process. . . . To introduce wealth or payment of a fee as a measure of a voter's qualifications is to introduce a capricious or irrelevant factor.  The degree of the discrimination is irrelevant. . . . [T]he requirement of fee paying causes an 'invidious' discrimination. . . .
>
> . . . .

---

[18] NAACP, 2014 WI 98, ¶¶60-65; id., ¶¶86-97 (Crooks, J., dissenting).

[19] The court overruled Breedlove, 302 U.S. 277, which had upheld poll taxes as constitutional just 30 years prior.  By the time Harper was mandated, only four states still imposed poll taxes: Texas, Alabama, Virginia, and Mississippi.

For to repeat, wealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned.[20]

¶98 The NAACP majority opinion asserts that "to constitutionally administer Act 23, the [Department of Motor Vehicles] may not require documents in order to issue a [Department of Transportation] photo identification card for voting that require payment of a fee to any government agency." NAACP, 2014 WI 98, ¶7 n.5.

¶99 Despite apparently invalidating some fees and costs for obtaining Act 23 photo IDs, the NAACP majority opinion does not resolve the de facto poll tax issue for other fees and costs.

¶100 For example:

- An individual may need to obtain a court order in the case of a name change, gender change, adoption, or divorce, which will require additional filing and court costs.[21]

- An individual may need to provide a marriage certificate or certified copy of a judgment of divorce,[22] which will require court costs, filing fees, and other costs associated with a court order.

---

[20] Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 668, 670 (1966) (internal quotation marks omitted).

[21] Wis. Admin. Code § Trans 102.15(3)(a)17 (Feb. 2013).

[22] Wis. Admin. Code § Trans 102.15(4)(a)11. (Feb. 2013).

11

- An individual must provide citizenship documentation to obtain Act 23 photo ID,[23] such as a passport, a certificate of United States citizenship, a certificate of naturalization, etc., each of which have associated costs imposed by the federal government. The fee for applying is $165 for a passport for first-time adult applicants,[24] and $600 for a certificate of naturalization.[25]

¶101 Exactly which costs and severe burdens the NAACP majority opinion invalidates is anyone's guess.

¶102 The NAACP majority opinion avers that it cures the unconstitutional imposition of these costs and fees through its "saving construction" of Wis. Admin. Code § Trans 102.15(3)(b)-(c).[26]

---

[23] Wis. Admin. Code § Trans 102.15(3m) (Feb. 2013).

[24] See United States Passports & International Travel, United States Department of State, Passport Fees, http://travel.state.gov/content/passports/english/passports/information/costs.html (last visited July 14, 2014).

[25] See Instructions for Form N-600, Application for Certificate of Citizenship, OMB No. 1615-0057 at 7 (2014), available at http://www.uscis.gov/sites/default/files/files/form/n-600instr.pdf (last visited July 14, 2014).

[26] Wisconsin Admin. Code § Trans 102.15(3)(b)-(c) (Feb. 2013) states as follows:

(b) If a person is unable to provide documentation under par. (a), and the documents are unavailable to the person, the person may make a written petition to the administrator of the division of motor vehicles for an exception to the requirements of par. (a). The application shall include supporting documentation required by sub. (4) and:

12

¶103 The NAACP majority opinion reads this Department of Transportation regulation to provide that if a qualified voter asserts that he or she is obtaining a photo ID for the purposes of voting, the administrator shall exercise his or her discretion in deciding whether to issue a DOT photo identification card without the documents referenced in § Trans 102.15(3)(a) "in a constitutionally sufficient manner." NAACP majority op., ¶71. The NAACP majority opinion leaves the administrator and the public to guess what a "constitutionally sufficient manner" is.

¶104 The NAACP majority opinion regarding Department of Transportation regulations is not, however, a cure for the constitutional defect.

¶105 First, the NAACP majority opinion provides no process for an individual to demonstrate that he or she is "constitutionally 'unable'" to obtain the necessary documentation required by Wis. Admin. Code

---

1. A certification of the person's name, date of birth and current residence street address on the department's form;

2. An explanation of the circumstances by which the person is unable to provide any of the documents described in par. (a); and

3. Whatever documentation is available which states the person's name and date of birth.

(c) The administrator may delegate to the administrator's subordinates the authority to accept or reject such extraordinary proof of name and date of birth.

13

§ Trans 102.15(3)(a).[27] What procedures must be followed by the Department of Transportation administrator and his or her designees when reviewing a petition or request? What is the timeline for petitioning the Department of Transportation or the Department of Motor Vehicles and the timeline for the agencies to process the petition or request? What proof may the administrator require? Can a Department of Transportation administrator and his or her designees apply his or her discretion to deny Act 23 photo ID because he or she does not find the petition credible? How may the administrator's ruling be challenged?

¶106 The NAACP majority opinion appears to leave discretion in the hands of the Department of Transportation administrator and his or her designees but provides no guidance to the Department of Transportation or to the public about proper procedures and the rights of qualified voters.

¶107 Second, the section of administrative regulations that the NAACP majority opinion "construes" to cure Act 23's constitutional defects appears to apply only to documents regarding proof of name and date of birth, not to other documentation required to obtain an Act 23 photo ID. A naturalization certificate required to prove citizenship or a marriage certificate required to prove identity may require payments to a government agency; these documents are not covered by the NAACP majority opinion's "saving" regulation.

---

[27] NAACP, 2014 WI 98, ¶69.

¶108 Third, as Justice Crooks' dissent notes, fees and costs other than fees paid directly to government agencies may be required to obtain an Act 23 photo ID.[28] These costs are similarly unaddressed and unresolved and may be invidious discrimination.

¶109 Thus, although the NAACP majority opinion appears to deem invalid any fees and costs paid to any government agency necessary for documentation to obtain an Act 23 photo ID, its supposed "saving construction" of the administrative regulations fails to cure the myriad variety of costs that Act 23 imposes on individuals attempting to obtain the photo ID necessary to exercise the right to vote.

¶110 The NAACP majority opinion invalidates the unconstitutional imposition of some de facto poll taxes as part of Act 23, but leaves other de facto poll taxes, fees, and costs intact.

¶111 Yet the majority opinion in the present case declares that Act 23 is facially constitutional. Neither the majority opinion nor I can explain the inconsistency.

II

¶112 The majority opinion erroneously uses the "presumption of constitutionality" standard of review to support its conclusions that Act 23 is constitutional. Majority op., ¶¶16-17. This standard is particularly inappropriate in the instant case, because:

---

[28] NAACP, 2014 WI 98, ¶¶102-103, 117-132 (Crooks, J., dissenting).

15

A. The majority opinion in NAACP has already declared a fee imposed by Act 23 an unconstitutional prerequisite for a qualified voter to exercise the right to vote;

B. The majority opinion in NAACP apparently uses several different standards of review; and

C. The presumption of constitutionality standard does not comport with longstanding state case law in which legislative regulation of voting rights has been challenged.

A

¶113 The court has already declared in NAACP that, as a matter of law, the fees imposed by Act 23 for a Department of Transportation photo identification card are in effect a de facto poll tax. The NAACP court has declared that the fees are severe, are so burdensome that they effectively deny qualified persons their right to vote, and are constitutionally impermissible.

¶114 The NAACP case is precedential in the instant case. When the court itself has in effect invalidated an integral part of Act 23 as unconstitutional, how can a presumption of constitutionality apply in the instant case? How can the court declare Act 23 constitutional in the instant case?

B

¶115 How can two opinions, League of Women Voters and NAACP, mandated the same day, use a different standard of review in gauging the constitutionality of Act 23? The same Act 23 is challenged in both cases as unconstitutional under Article III

16

of the state Constitution. A facial challenge is made in both cases.[29] Indeed, the plaintiffs in NAACP expressly disclaim that that they are making an as-applied challenge.[30] The majority opinion in NAACP concedes that the challenge is a facial challenge.[31]

¶116 In the instant case, the majority opinion employs the "presumption of constitutionality" standard, mucking it up somewhat. See ¶61, infra.

¶117 In NAACP, it is unclear what standard of review, if any, the majority opinion employs to reach its result. Depending on the section, the majority opinion in NAACP asserts several different standards of review.

¶118 In the section labeled "Standard of Review," the NAACP majority opinion asserts that "[i]f we conclude that a voter regulation creates a severe burden on electors' right to vote, we will apply strict scrutiny to the statute, and conclude that it is constitutional only if it is narrowly drawn to satisfy a compelling state interest." NAACP, 2014 WI 98, ¶22. This appears to be some variation on the Anderson/Burdick federal test for Equal Protection Clause and First Amendment facial challenges to statutes that impair the right to vote. See NAACP, 2014 WI 98, ¶¶26-39.

---

[29] See NAACP, 2014 WI 98, ¶¶19, 21; majority op., ¶14; Justice Crooks' concurrence, ¶¶61-63.

[30] Brief of the Plaintiffs-Respondents at 30.

[31] NAACP, 2014 WI 98, ¶¶19, 21.

17

¶119 In a strict-scrutiny analysis, the State has the burden to show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." State v. Baron, 2009 WI 58, ¶45, 318 Wis. 2d 60, 769 N.W.2d 34.

¶120 Yet in the section titled "Foundational Principles," the NAACP majority opinion asserts the presumption of constitutionality is the proper standard, stating that "statutes are presumed to be constitutional." NAACP, 2014 WI 98, ¶24. The NAACP majority opinion further asserts that it is the plaintiffs challenging the statute who "must prove that the statute is unconstitutional beyond a reasonable doubt." Id., ¶25.

¶121 The majority opinion also asserts that the presumption of constitutionality "may vary depending on the nature of the constitutional claim at issue." NAACP, 2014 WI 98, ¶24 (citing League of Women Voters). An identical statement appears in the majority opinion in the instant case, citing NAACP. Majority op., ¶16. This statement is an unexplained cipher, with no meaning or guidance for the analysis in either case or in future cases.

¶122 In its section titled "Saving construction," the NAACP majority opinion applies yet another standard of review, asserting that Act 23 is not unconstitutional, averring that "we do not initially weigh the burden identified . . . because a saving construction of the administrative rule must be

18

considered first."[32] Yet a court typically applies a "saving construction" by first assessing whether the statute is unconstitutional and only then assessing whether a saving construction can be applied.[33]

¶123 The NAACP majority opinion usurps the legislative role: "[A]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of . . . judicially rewriting it. Otherwise there would be no such thing as an unconstitutional statute." State v. Zarnke, 224 Wis. 2d 116, 139-40, 589 N.W.2d 370 (1999) (quoting United States v. X-Citement Video, 513 U.S. 64, 86 (1994) (Scalia, J., dissenting)) (internal quotation marks and citations omitted).

¶124 Finally, after its various machinations on the standard of review, the NAACP majority opinion claims to apply rational-basis review. NAACP, 2014 WI 98, ¶71.

¶125 Only by applying multiple contradicting standards of review can the NAACP majority opinion reach its multiple and

---

[32] NAACP, 2014 WI 98, ¶65.

[33] See State v. Zarnke, 224 Wis. 2d 116, 124-25, 139-40, 589 N.W.2d 370 (1999) (determining whether to apply a saving construction after State conceded that statute would be invalid otherwise); State v. Hall, 207 Wis. 2d 54, 67, 557 N.W.2d 778 (1997) (presenting three issues, and first determining that statute is unconstitutional, followed by saving construction analysis).

The NAACP majority opinion cites a variety of cases that deal with the jurisprudential doctrine of interpreting statutes to avoid a constitutional conflict. See NAACP, ¶64. None of these cases addresses the "savings construction" doctrine.

19

contradictory holdings: in one breath invalidating fees required for documentation to obtain an Act 23 photo ID as an unconstitutional de facto poll tax and severe burden, and in the next breath asserting that Act 23 is nonetheless constitutional and that "the burdens of time, inconvenience and cost upon electors' right to vote are not severe under our interpretation of § Trans 102.15 . . . ."[34]

¶126 The NAACP majority opinion's shifting standards of review throughout the opinion make it impossible to evaluate how or why the court reaches its decision.

¶127 The majority opinions in NAACP and in the instant case fail to rely on Wisconsin cases that have over the years interpreted and applied the voting provisions of the Wisconsin Constitution.[35]

¶128 The majority opinions ignore the uniqueness of Wisconsin's constitutional provision on voting rights and Wisconsin's unique jurisprudence protecting the right to vote under its own constitution. The United States Constitution does not protect voting rights in the same way as does the Wisconsin Constitution,[36] and the federal challenges to state voter ID legislation are based on the Equal Protection Clause.

---

[34] NAACP, 2014 WI 98, ¶72.

[35] See Crawford, 553 U.S. 181; Burdick v. Takushi, 504 U.S. 428 (1992); Anderson v. Celebrezze, 460 U.S. 780 (1983).

[36] Compare San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 132 n.78 (1973) ("[T]he right to vote, per se, is not a [federal] constitutionally protected right.") with Phelps, 144 Wis. at 14-15 ("[T]he right to vote is one . . . guaranteed by the declaration of rights and by section 1, art. 3 of the [Wisconsin] Constitution.").

20

¶129 The majority opinion in the present case attempts to distinguish the League of Women Voters and NAACP cases to justify its different approaches to the standard of review. See majority op., ¶11 n.8.

¶130 The majority opinion claims that the two cases are different because the League of Women Voters does not assert that Act 23 is so burdensome that it effectively denies the right to vote. Majority op., ¶11, n.8. The majority opinion ventures that, in contrast, in NAACP the burdens on the right to vote are at issue. Majority op., ¶44 n.11.[37]

¶131 This distinction is not borne out in the cases. Burdens on the right to vote of constitutionally qualified voters are at issue in both cases.

¶132 The League of Women Voters complains that Act 23 adopts and adds qualifications for voting that are not in the Wisconsin Constitution, namely requiring production of a specified photo ID, and thus on its face Act 23 impairs or destroys the voting right of persons constitutionally qualified to vote and creates an impermissible burden on the right to vote.[38] Act 23 destroys or burdens the right to vote by excluding from voting any registered, qualified voter who fails to display the mandated form of photo ID.

---

[37] See also Justice Crooks' concurrence, ¶61 (determining that the claims in the instant case are "distinct from the challenge raised" in NAACP because the plaintiffs in NAACP "provid[ed] a record with evidence of the Act's burden on individual Wisconsin residents").

[38] See Brief of Plaintiffs-Respondents-Petitioners at 38-39.

21

¶133 In contrast, the NAACP asserts that Act 23 imposes burdens of time, inconvenience, and costs on the constitutionally qualified voter to obtain an Act 23 photo ID.[39]

¶134 In both the instant case and NAACP, the challenges are plainly facial challenges asserting a burden on Wisconsin citizens who are qualified to vote under the Wisconsin Constitution.[40] The precise nature of the burden complained of

---

[39] The record in League of Women Voters also reflects financial and other costs that burden qualified electors' right to vote. See, e.g., Plaintiff's Amended Complaint, R22:7-9, ¶¶18-26; Affidavit of Michael McCabe, President of Wisconsin Democracy Coalition (alleging that various members of his organization will have their right to vote burdened by the photo identification requirements); Affidavit of Analiese Eicher, Government Relations Director, United Council of UW Students, (alleging that many universities and colleges do not have photo identification cards that comply with Act 23 and do not plan to produce such cards, and that this will prevent many students for whom student identification cards are primary identification from voting); Affidavit of Ingrid Thompson (alleging that individuals in the senior living facility that she directs will be unable to vote); Affidavit of Amy Mendel-Clemens in Support of Amicus Curiae Brief on Behalf of Dane County (alleging that replacement birth certificates are difficult or impossible to obtain from certain states, and that California and Pennsylvania have not responded or do not respond to the forms used by Dane County).

[40] The distinction between a facial and an as-applied challenge is not always clear. Justice Crooks states the standard of review as follows: "The appropriate framework to analyze the plaintiffs' challenge to Act 23 is the modified facial challenge approach, which the United States Supreme Court has applied in comparable cases." NAACP, 2014 WI 98, ¶85 (Crooks, J., dissenting) (footnote omitted).

There is also confusion about the application of the "presumption of constitutionality" standard of review to a facial challenge or an as-applied challenge.

22

in each case is different, but in both cases the plaintiffs urge that Act 23 imposes a burden on qualified voters impairing or depriving them of their Wisconsin constitutionally guaranteed right to vote.

¶135 If a more stringent standard of review than the "presumption of constitutionality" applies in NAACP, it must, in my opinion, also apply in the instant case.

¶136 Neither the majority opinion in the instant case, nor the concurrence in the instant case, nor the majority opinion in NAACP advances satisfactory reasons for applying different standards in the two cases. I conclude that this court must apply an identical standard of review in both cases and that the standard of review is not the "presumption of constitutionality" standard.

C

¶137 Finally, I conclude that the "presumption of constitutionality" standard of review does not apply because our case law in voting rights cases contravenes this standard. No Wisconsin court has ever applied this presumption to legislative regulations on voting. None of the cases cited by the majority opinion supporting this standard of review relates to the

---

The majority opinion, ¶13, distinguishes between standards of review for facial and as-applied cases, quoting State v. Wood, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63). Compare Wood, 323 Wis. 2d 321, ¶15 (applying identical presumption of constitutionality to both facial and as-applied challenges) with Tammy W.-G. v Jacob T., 2011 WI 30, ¶¶46-48, 333 Wis. 2d 273, 797 N.W.2d 854 (citing Wood for the proposition that the presumption applies in as-applied challenges but that "we do not presume that the State applies statutes in a constitutional manner").

23

fundamental right to vote, except for NAACP, whose standard of review is, to be charitable, confusing.[41]

¶138 Our cases addressing voting rights often do not state a standard of review as such (as was judicial practice at the time the cases were decided), and they predate the federal adoption of strict scrutiny as a judicial standard for reviewing constitutional claims under the federal Constitution.[42]

¶139 Nevertheless, key principles can be drawn from our jurisprudence to guide our review of laws governing the right to vote. The essence of the cases is that courts must apply the highest levels of scrutiny to laws regulating the right to vote.[43]

---

[41] Majority op., ¶¶15-17. See ¶¶115-136, supra.

[42] The first case invoking the "strict scrutiny" standard in evaluating Wisconsin constitutional rights that I can find is Town of Vanden Broek, Outagamie Cnty. v. Reitz, 53 Wis. 2d 87, 191 N.W.2d 913 (1971). No reported Wisconsin appellate case since that date other than the instant case and NAACP has raised a facial challenge to a state statute or regulation alleging that it violates Article III of the Wisconsin Constitution.

[43] The United States Supreme Court has similarly stated that before the right to vote "can be restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny." Dunn v. Blumstein, 405 U.S. 330, 336 (1972) (citing Evans v. Cornman, 398 U.S. 419, 422 (1970)).

The NAACP majority opinion at ¶22 describes its test as applying strict scrutiny if a "severe burden" exists on the right to vote, while the dissent in NAACP follows the language of the Anderson/Burdick test requiring balance between any burden on the right to vote and the state interests. NAACP, 2014 WI 98, ¶¶100-102 (Crooks, J., dissenting).

24

¶140 Because of the fundamental nature of the right to vote, the court has recognized that the right to vote is unlike other rights guaranteed by the Wisconsin Constitution and is specially protected from legislative interference:

Thus is given the right to vote a dignity not less than any other of many fundamental rights. So it has been rightly said by judicial writers: "It is a right which the law protects and enforces as jealously as it does property in chattels or lands. . . . The law maintains and vindicates" it "as vigorously as it does any right of any kind which men may have or enjoy." State v. Staten, 46 Tenn. 233, 241 [(1869)]. It is commonly referred to as a sacred right of the highest character and then again, at times, as a mere privilege, a something of such inferior nature that it may be made "the foot-ball of party politics." We subscribe to the former view, placing the right of suffrage upon the high plane of removal from the field of mere legislative material impairment.

State ex rel. McGrael v. Phelps, 144 Wis. 1, 15, 128 N.W. 1041, 1046 (1910) (emphasis added).

¶141 One key principle in the case law is that the legislature cannot impose a restriction on voting that constitutes an additional "qualification" on the right to vote. Only the Wisconsin Constitution can impose additional qualifications on the right to vote.

¶142 The case law has drawn a line between those laws that create an "additional qualification" on the right to vote, thereby impairing an otherwise qualified voter from casting a

---

Furthermore, Wisconsin applies a strict scrutiny standard of review for First Amendment challenges. Courts have located the federal right to vote in the First Amendment right to freedom of speech. See Harper, 383 U.S. at 665 ("[T]he right to vote in state elections is implicit, particularly by reason of the First Amendment . . . .").

25

vote, and those that merely verify a voter's existing constitutional qualifications without restricting his or her existing rights.

¶143 This distinction between impermissibly adding qualifications and verifying existing qualifications appears, for example, in two early cases, also cited by the majority opinion,[44] State ex rel. Knowlton v. Williams, 5 Wis. 308 (1856), and State ex rel. Cothren v. Lean, 9 Wis. 254 [*279] (1859).

¶144 In Knowlton, an elector challenged a 30-day residency requirement that restricted the right to vote to those individuals who had resided in the district for 30 days prior to election. The court in Knowlton voided the residency requirement as an additional qualification on the right to vote beyond what the constitution required:

> We have no doubt that the qualifications of the voters as fixed by the act are, in respect to residence in the state, quite different from those prescribed in the constitution. The latter instrument is explicit; it provides in express terms that a person who possesses the other qualifications mentioned, and who has resided in the state one year next preceding any election, shall be deemed a qualified elector at such election.
>
> . . . .
>
> The constitution provides, that if a person possesses certain qualifications, and has resided in the state one year next preceding any election, he shall be deemed a qualified elector at such election; while the act of the legislature in question provides, in effect, that this shall not be sufficient, but that he shall, in addition, have resided for thirty days

---

[44] Majority op., ¶¶25-32.

26

previous to the time when the election is holden in the town where he offers his vote.

We have no doubt that the legislature have the power to provide that a person who has a right to vote under the constitution shall be allowed to exercise this right only in the town where he resides, because this would be only to prescribe the place where a right which he possessed under the constitution shall be exercised, and fixes upon the most convenient place for its exercise. Such a provision does not add to the qualifications which the constitution requires; but an act of the legislature which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, cannot be sustained.[45]

¶145 Thus, the law fixing the location where an elector can vote regulated merely how, where, and when to vote, but by adding that the elector had to reside in the district for the previous 30 days, the law in question restricted the rights of those voters who would otherwise be qualified under the Wisconsin Constitution to vote.

¶146 The prohibited law in Knowlton must be compared with the law upheld in Cothren. In Cothren, an elector challenged a law that allowed elections officials to "challenge for cause" a voter's qualifications. An election official could challenge the voter's qualifications for cause at the polls; if the voter refused to answer the election official's questions, the vote would not be counted.[46]

¶147 The court in Cothren approved of the "challenge for cause" requirement as mere proof that the qualified voter indeed possessed the constitutional qualifications to vote,

---

[45] Knowlton, 5 Wis. at 316 (emphasis added).

[46] Cothren v. Lean, 9 Wis. 254, 258-59 [*284] (1859).

27

distinguishing Knowlton because the challenge-for-cause procedure in Cothren did not prescribe additional qualifications. The Cothren court reasoned that the law tested whether the constitutional qualifications for electors were met, rather than creating new requirements. The voter in Cothren "failed to furnish the proof required by law, showing his right to vote," that is, he failed to prove that he had met the existing constitutional qualifications:

> [T]he grounds of challenge to which the sets of questions are adapted, imply only the qualifications required by the constitution; nothing further or different. This act, therefore, instead of prescribing any qualifications for electors different from those provided for in the constitution, contains only new provisions to enable the inspectors to ascertain whether the person offering to vote possessed the qualifications required by that instrument, and certainly it is competent for the legislature to enact such. The necessity of preserving the purity of the ballot box, is too obvious for comment, and the danger of its invasion too familiar to need suggestion. While, therefore, it is incompetent for the legislature to add any new qualifications for an elector, it is clearly within its province to require any person offering to vote, to furnish such proof as it deems requisite, that he is a qualified elector.

Cothren, 9 Wis. at 258-59 (1859) (emphasis added).

¶148 In sum, the Cothren law targeted only the qualifications required by the constitution. The questions the voters were asked were those questions necessary to ascertain whether the voter satisfied the qualifications enumerated in the Wisconsin Constitution: "the grounds of challenge to which the sets of questions are adapted, imply only the qualifications

28

required by the constitution; nothing further or different." Cothren, 9 Wis. at 258.

¶149 The guiding distinction between an impermissible additional qualification and proof of qualification as elucidated by Knowlton and Cothren continued in later cases.

¶150 In State ex rel. Wood v. Baker, 38 Wis. 71 (1875), the court further clarified the reasoning of Knowlton and Cothren regarding boundaries on regulating the right to vote. In Baker, the law required a voter's name be verified against an election registry before the voter would be allowed to vote. The registry erroneously omitted a voter.

¶151 The Baker court upheld the registry law, but it put a finer point on the distinction between prohibited "additional legislative qualifications" and permissible legislative requirements of "proof of the right" by asserting that the requirement of proof could be only "proof consistent with the right itself," i.e., the proof could verify only the constitutional qualifications of electors. The Baker court, 38 Wis. at 86, declared that the legislature may require reasonable proof of the right to vote but cannot impose "a condition precedent to the right" to vote. Being on the registry was not a precondition to vote because the law "left other proof open to the voter at the election consistent with his present right to vote." The Baker court explained:

> And such we understand to be the theory of the registry law . . . not to abridge or impair the right, but to require reasonable proof of the right. It was undoubtedly competent for the legislature to provide for a previous registry of voters, as one mode of

29

proof of the right; so that it should not be a condition precedent to the right itself at the election, but, failing the proof of registry, left other proof open to the voter at the election, consistent with his present right (emphasis added).

¶152 A second key principle emerges from the case law: "No constitutional qualification of an elector can in the least be abridged, added to, or altered, by legislation or the preten[s]e of legislation. Any such action would be necessarily absolutely void and of no effect."[47] If a law requires of a voter what is impracticable or impossible, and makes the voter's right to vote depend upon a condition he or she is unable to perform, the law impermissibly abridges the constitutional right to vote and is void:

> No registry law can be sustained which prescribes qualifications of an elector additional to those named in the constitution, and a registry law can be sustained only, if at all, as providing a reasonable mode or method by which the constitutional qualifications of an elector may be ascertained and determined, or as regulating reasonably the exercise of the constitutional right to vote at an election. If the mode or method, or regulations, prescribed by law for such purpose, and to such end, deprive a fully qualified elector of his right to vote at an election, without his fault and against his will, and require of him what is impracticable or impossible, and make his right to vote depend upon a condition which he is unable to perform, they are as destructive of his constitutional right, and make the law itself as void, as if it directly and arbitrarily disfranchised him without any pretended cause or reason, or required of an elector qualifications additional to those named in the constitution.

Dells v. Kennedy, 49 Wis. 555, 558, 6 N.W. 246 (1880) (second emphasis added).

---

[47] Dells, 49 Wis. at 557.

30

¶153 As the Baker court emphasized, "[E]very one having the constitutional qualifications then, may go to the polls, vested with the franchise, of which no statutory condition precedent can deprive him."[48] If voters "went to the election clothed with a constitutional right of which no statute could strip them, without some voluntarily failure on their own part to furnish statutory proof of right," regulations that modified the qualifications to deprive these qualified voters of the right to vote in those circumstances would "be monstrous."[49]

¶154 A third key principle in the case law distinguishes between cases involving laws that impair or destroy the right to vote, which require the most stringent judicial review, and laws that enhance or expand the right to vote, which receive deference to the legislature as long as the regulation is reasonable.

¶155 If a legislative regulation enhances, protects, or expands the right to vote, the inquiry into the regulation need address only whether the regulation was "reasonable," and our review gives deference to "legislative discretion."[50] If, however, a legislative regulation restricts or impairs the right to vote, then the regulation is void on its face, regardless of state interest.

---

[48] Baker, 38 Wis. at 86.

[49] Id. at 89.

[50] See Phelps, 144 Wis. at 18; see also State ex rel. Wood v. Baker, 38 Wis. 71, 86 (1875) (holding that requiring some proof of identity prior to voting existed "not to abridge or impair the right, but to require reasonable proof of the right" and therefore holding proof of identity as constitutional).

31

¶156 This principle was stated in <u>Dells v. Kennedy</u>, 49 Wis. 555, 6 N.W. 246 (1880). The <u>Dells</u> court noted that the legislature could enact reasonable and necessary regulations to protect the right to vote, but that the legislature's regulations were afforded no deference if they impaired the right to vote:

> For the orderly exercise of the right [to vote] . . . it is admitted that the legislature must prescribe necessary regulations as to the places, mode and manner, and whatever else may be required to insure its full and free exercise. But this duty and right inherently imply that such regulations are to be subordinate to the enjoyment of the right, the exercise of which is regulated. <u>The right must not be impaired by the regulation. It must be regulation purely, not destruction.</u> If this were not an immutable principle, elements essential to the right itself might be invaded, frittered away, or entirely exscinded, under the name or preten[s]e of regulation, and thus would the natural order of things be subverted by making the principle subordinate to the accessory. To state is to prove this position. <u>As a corollary of this, no constitutional qualification of an elector can in the least be abridged, added to, or altered, by legislation or the preten[s]e of legislation. Any such action would be necessarily absolutely void and of no effect.</u>

<u>Dells</u>, 49 Wis. at 557.

¶157 This principle was further elucidated in <u>State ex rel. McGrael v. Phelps</u>, 144 Wis. 1, 128 N.W. 1041 (1910). The <u>Phelps</u> court recognized that the legislature is afforded a certain amount of deference by the judiciary when the legislature uses the police power to enact reasonable regulations upon voting. If, however, the regulation impairs the exercise of the right to vote rather than improves it, the regulation is no longer subject to deference and is instead unconstitutional:

32

> Regulation which impairs or destroys rather than preserves and promotes, is within condemnation of constitutional guarantees. So it follows that, if the law in question trespasses upon the forbidden field, it is only law in form.

State v. Phelps, 144 Wis. 1, 18 (1910).

¶158 A final principle from our case law recognizes that because, as a practical matter, government must regulate elections so that they are orderly, fair, and honest, and that such regulations will invariably impose some burdens upon individual voters, the legislature has the power to say how, when, and where a qualified elector may vote, but may not regulate who may vote. The who is governed by the Wisconsin Constitution.

¶159 In State ex rel. Frederick v. Zimmerman, 254 Wis. 600, 37 N.W.2d 472 (1949), the court explained the legislature's power as follows:

> It is true that the right of a qualified elector to cast his ballot for the person of his choice cannot be destroyed or substantially impaired. However, the legislature has the constitutional power to say how, when and where his ballot shall be cast for a justice of the supreme court.

Frederick, 254 Wis. at 613-14 (emphasis added).

¶160 The legislature cannot, however, under the guise of regulating how, when, and where a ballot may be cast, destroy or substantially impair the right to vote.[51] No matter how reasonable the law and how much deference the legislature receives, "[a]ll these laws were subject to the rule of law that

---

[51] State ex rel. Frederick v. Zimmerman, 254 Wis. 600, 613, 37 N.W.2d 472 (1949).

33

an elector has the right to cast his [or her] ballot for whomsoever he [or she] chooses and cannot constitutionally be deprived of it."[52]

¶161 The essence of the voting rights jurisprudence interpreting and applying the Wisconsin Constitution is that courts must apply the highest level of scrutiny to laws regulating the right to vote.

III

¶162 Applying the highest level of scrutiny and applying the key principles derived from our voting rights case law, I conclude that Act 23 is unconstitutional.

¶163 The force of the Wisconsin Constitution is clear: "[E]very one having the constitutional qualifications [at the time of election] may go to the polls, vested with the franchise, of which no statutory condition precedent can deprive him [or her][, b]ecause the constitution makes him [or her], by force of his [or her] present qualifications, 'a qualified voter at such election.'" Baker, 38 Wis. at 86.

¶164 Under Act 23, a voter qualified under the Wisconsin Constitution——that is, a person who is over the age of 18, is a United States citizen, and is a resident of Wisconsin——and who has met the registration requirements under the Wisconsin statutes cannot vote even if he or she comes to the polls with extensive personal photo identification information. Only an Act 23 photo ID suffices. This requirement strips a qualified registered voter of the right to vote.

---

[52] Id. at 618.

¶165 The legislature does not have the power under the guise of an election regulation to strip a qualified, registered voter of the right to vote.[53] Act 23 deprives a person of the right to vote even though that person meets the constitutional qualifications to vote and is therefore unconstitutional.

¶166 I agree with the League of Women Voters and the circuit court that Act 23 impermissibly adds a fourth qualification for voting in addition to the three specified in the Wisconsin Constitution. The fourth qualification is a legislatively specified photo ID. Act 23 deprives all qualified, registered voters who do not possess an Act 23 photo ID from exercising the right to vote. The legislature has thus rendered an Act 23 photo ID in and of itself a qualification for voting.[54]

¶167 The State may seek verification of a voter's identity, but the verification must be limited to "proof consistent with the right itself."[55] Act 23 does not merely verify a voter's identity. Rather, Act 23 creates a precondition to vote. In order to cast a ballot, a voter must obtain a specified government photo ID.

---

[53] Baker, 38 Wis. at 89.

[54] Act 23 does not fall into any of the five areas of law in which Article III, Section 2 of the Wisconsin Constitution authorizes the legislature to enact laws. It does not define residency. It does not provide for registration of voters. It does not provide for absentee voting. It does not exclude from suffrage persons convicted of a felony or adjudged incompetent. It does not extend the right of suffrage to additional classes.

[55] See Baker, 38 Wis. at 86.

35

¶168 To obtain an Act 23 photo ID, the voter must verify his or her identity with additional documentation.[56] These

---

[56] Wisconsin Admin. Code § Trans 102.15(4)(a) (Feb. 2013) allows one of the following as satisfactory proof of identity to obtain a photo ID:

(a) A supporting document identifying the person by name and bearing the person's signature, a reproduction of the person's signature, or a photograph of the person. Acceptable supporting documents include:

2. A valid operator's license, including a license from another jurisdiction, except a province of the Dominion of Canada, bearing a photograph of the person;

Note: Temporary driving receipts from other jurisdictions are not acceptable. "Another jurisdiction" is defined at s. 340.01 (41m), Stats.

3. Military discharge papers (including certified copy of federal form DD-214);

4. A U.S. government and military dependent identification card;

5. A valid photo identification card issued by Wisconsin or another jurisdiction, except a province of the Dominion of Canada, bearing a photograph of the person;

11. A marriage certificate or certified copy of judgment of divorce;

Note: A testament to the marriage document does not satisfy this requirement.

13. A social security card issued by the social security administration;

Note: Metal or other duplicate Social Security Cards are not acceptable.

23. Any document permitted under sub. (3)(a), if it bears a photograph of the person and was not used as proof of name and date of birth.

documents sufficiently provide proof of identity to receive an Act 23 photo ID.

¶169 Yet these documents, all of which verify one's identity for the purposes of obtaining an Act 23 photo ID, are not acceptable under Act 23 to prove identity for the purposes of voting. By restricting verification of identity to specified government-issued photo IDs, Act 23 does not condition the right to vote on <u>verification of identity</u>. Instead, Act 23 conditions the right to vote on <u>production of a particular identity card</u>. Requiring a specific identity card is an additional qualification on the right to vote, and it is therefore impermissible under the Wisconsin Constitution.

¶170 The mandatory precondition to voting of presenting an Act 23 photo ID is imposed on all voters who have already established their qualifications to vote through the registration process. No connection exists between the Act 23 voter ID requirement and a voter's constitutional qualifications to vote.

¶171 Unlike constitutionally permissible verifications of voter identity, which enable a fully qualified voter to vote by providing various forms of proof of identity, Act 23 has no such

---

Note: This permits a person to use two separate documents under sub. (3)(a) to satisfy the requirements of subs. (3) and (4).

24. Department of homeland security/transportation security administration transportation worker identification credential.

fail-safe provision.[57]   The only way a voter can exercise the right to vote under Act 23 is to display the requisite ID.

¶172 If the qualified voter cannot obtain, loses, or forgets to bring an Act 23 voter ID, Act 23 strips a qualified voter of the right to vote, even though the ID required by Act 23 is mentioned nowhere in the Constitution.  "[A]n act of the legislature which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, cannot be sustained."[58]

¶173 Act 23 in effect amends the Wisconsin Constitution to add a fourth voter qualification, an Act 23 photo ID card, without complying with the constitutional provisions governing amendment of the Wisconsin Constitution.[59]  This the legislature cannot do.

---

[57] In State ex rel. Wood v. Baker, 38 Wis. 71, 86-87 (1875), the legislation provided for a fail-safe mechanism.  A qualified voter who failed to appear on the election registry could nonetheless furnish proof of his right to vote.  "[P]roof of the right [to vote] . . . should not be a condition precedent to the right itself at the election, but failing the proof of registry [the legislature] left other proof open to the voter at the election, consistent with his present right."

In contrast with Act 23, in Michigan, a voter who does not have adequate photo identification is not required to incur the costs of obtaining photo identification as a condition of voting.  The Michigan voter may simply sign an affidavit in the presence of an election inspector and does not incur any costs in the execution of an affidavit.  In re Request for Advisory Opinion Regarding Constitutionality of 2005 AP 71, 740 N.W.2d 444 (Mich. 2007).

[58] Knowlton, 5 Wis. at 316.

[59] Wis. Const. art. XII, §§ 1-2.

¶174 Furthermore, Act 23 violates key principles established in Wisconsin case law for review of a law regulating voting.

¶175 Act 23 does not preserve, promote or enhance a qualified voter's right to vote; it impairs or destroys a qualified voter's constitutional right to vote by requiring a specific form of voter photo identification.[60] It imposes significant burdens of direct and indirect costs on a constitutionally qualified voter to acquire the photo ID, as Justice Crooks explains in his dissent in NAACP, thus severely and significantly impairing the right of a qualified voter to cast a ballot.[61] "The right must not be impaired by the regulation. It must be regulation purely, not destruction."[62]

¶176 Act 23 abridges, adds to, or alters the constitutional qualifications of electors. As a result of Act 23, qualified voters are barred from voting through no fault of their own.[63] It is clear on the face of Act 23 that some voters will be asked to perform "impracticable or impossible conditions."[64] "[L]egislation on the subject of elections is within the constitutional power of the Legislature so long as it merely

---

[60] See Phelps, 144 Wis. at 18.

[61] NAACP, 2014 WI 98, ¶¶117-132 (Crooks, J., dissenting).

[62] See Dells, 49 Wis. at 557.

[63] "It would be a fraud on the constitution to hold [qualified electors] disenfranchised without notice or fault." Baker, 38 Wis. at 89.

[64] See Dells, 49 Wis. at 557.

regulates the exercise of the elective franchise, and does not deny the franchise itself either directly or by rendering its exercise so difficult and inconvenient as to amount to a denial."[65]

¶177 Act 23 does not regulate <u>how</u>, <u>when</u>, and <u>where</u> a voter casts his or vote.[66] By creating the strict requirement that voters without an Act 23 photo ID "shall not be permitted to vote," the legislature has restricted the franchise to a limited group of individuals——those individuals who can present an Act 23 photo ID. Thus Act 23 regulates <u>who</u> is qualified to vote, adding a fourth qualification for voters to meet.

¶178 For these reasons, I conclude that Act 23 is unconstitutional on its face.

* * * *

¶179 Our State has long recognized that the right to vote is the highest of rights and has enshrined the right in our own constitution. It is the right upon which all other rights depend in a democratic society, and our court has consistently defended and protected that right above all others.

¶180 As a result of Act 23, a qualified registered voter, with all the proof of his or her qualifications and identity, can no longer be assured of the right to vote. Act 23 adds a new qualification for voters, repugnant to our constitution and

---

[65] <u>State ex rel. Van Alstine v. Frear</u>, 142 Wis. 320, 341, 125 N.W. 961 (1910) (allowing legislative enactment of primary election ballot procedures).

[66] <u>See</u> <u>Frederick</u>, 254 Wis. at 613.

"monstrous" to those qualified voters denied the right to vote through no fault of their own.[67]

¶181 For many, including our friends, neighbors, and relatives, Act 23 imposes a precondition to voting that deprives qualified voters of the right to vote. Such a precondition is unconstitutional. "[E]very one having the constitutional qualifications then, may go to the polls, vested with the franchise, of which no statutory condition precedent can deprive him."[68]

¶182 For the foregoing reasons, I dissent.

¶183 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[67] See Baker, 38 Wis. at 89: "It would be a fraud on the constitution to hold [a voter whose name was not in the registry] disfranchised without notice or fault. . . . And it would be monstrous in us to give such an effect to the registry law, against its own spirit and in violation of the letter and spirit of the constitution."

[68] Baker, 38 Wis. at 86